E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
WILLIAM LARSEN (Cal. Bar No. 314091)
ALEXANDRA M. MICHAEL (Cal. Bar Pending)
Assistant United States Attorneys
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0298/3756
    Facsimile: (213) 894-6269/0141
    Email:    william.larsen@usdoj.gov
           alexandra.michael@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>        v.<br><br>CARL HOLBROOK,<br><br>     Defendant. | No. 2:23-CR-503-SPG<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S FOURTH RULE 12 MOTION |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys William Larsen and Alexandra Michael, hereby files its opposition to defendant's motion to dismiss or for alternative remedies.

///

///

///

///

This opposition is based upon the attached memorandum of points and authorities, the declarations of Patrick Lane, Deanna Quesada, and William Larsen, the files and records in this case, and such further evidence and argument as the Court may permit.

As set forth below, the government requests that the Court resolve defendant's motion before opening statements -- whether on the papers or after hearing argument.  The government would propose to hold argument on defendant's motion before the jury is sworn, even if that means delaying opening statements until Tuesday.  For the reasons stated below, if the Court denies defendant's motion, the Court should make clear that defendant may not argue spoliation before the jury.

Dated: July 28, 2024

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____
WILLIAM LARSEN
ALEXANDRA MICHAEL
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# Table of Contents

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.   INTRODUCTION...................................................1

II.  FACTS.........................................................3

    A.   Defendant Flees; LAPD Officers Pursue Him and Find a
         Loaded Gun...............................................3

    B.   Officers Collect Evidence, Including the Backpack........3

    C.   LAPD Evidence Custodians Destroy the Backpack and a
         Glass Jar That Had Contained Marijuana...................7

    D.   The Court Denies Defendant's Motion to Suppress
         Evidence.................................................9

III. ARGUMENT.....................................................10

    A.   Defendant Cannot Show That the Government Knowingly
         Destroyed Material Exculpatory Evidence with No
         Comparable Substitute in Bad Faith......................10

         1.   The backpack's most notable feature is its lack
              of relevance; it has no exculpatory value..........11

         2.   Comparable evidence is available because the
              backpack is clearly depicted in multiple videos....17

         3.   Defendant fails to show bad faith..................19

         4.   Defendant makes no Youngblood argument as to the
              uncollected sock, and Ninth Circuit authority
              would foreclose any such claim.....................22

    B.   No lesser sanctions are warranted, including an
         adverse inference instruction...........................22

         1.   Defendant's misleading partial quotation of the
              relevant legal standard............................23

         2.   The government acted within the range of
              reasonableness.....................................24

         3.   There is no prejudice to defendant.................25

         4.   Defendant's motion provides no cause to revisit
              the Court's ruling on Rule 404(b) evidence.........26

IV.  CONCLUSION...................................................27

**Table of Authorities**

<u>**CASES**</u>

<u>Arizona v. Youngblood</u>, 488 U.S. 51 (1988)......................passim

<u>Brady v. Maryland</u>, 373 U.S. 83 (1963)..............................11

<u>California v. Trombetta</u>, 467 U.S. 479 (1984)..............10, 14, 16

<u>Giglio v. United States</u>, 405 U.S. 150 (1972).......................14

<u>Grisby v. Blodgett</u>, 130 F.3d 365 (9th Cir. 1997)...................15

<u>Illinois v. Fisher</u>, 540 U.S. 544 (2004)...................10, 11, 20

<u>Mfg. Automation and Software Sys., Inc. v. Hughes</u>, 2019 WL
    266970 (C.D. Cal. Jan. 15, 2019)...............................2

<u>Paradis v. Arave</u>, 954 F.2d 1483 (9th Cir. 1992)....................14

<u>United States v. Barton</u>, 995 F.2d 931 (9th Cir. 1993)......13, 14, 21

<u>United States v. Cooper</u>, 983 F.2d 928 (9th Cir. 1993).............18

<u>United States v. Del Toro-Barboza</u>, 673 F.3d 1136 (9th Cir. 2012)...10

<u>United States v. Drake</u>, 543 F.3d 1080 (9th Cir. 2008)......16, 17, 18

<u>United States v. Estrada</u>, 453 F.3d 1208 (9th Cir. 2006)...........19

<u>United States v. Heffington</u>, 952 F.2d 275 (9th Cir. 1991).........21

<u>United States v. John</u>, 683 F. App'x 589 (9th Cir. 2017)...........22

<u>United States v. Lord</u>, 711 F.2d 887 (9th Cir. 1983)...............11

<u>United States v. Martinez-Martinez</u>, 369 F.3d 1076 (9th Cir.
    2004)..............................................15, 22

<u>United States v. Robertson</u>, 895 F.3d 1206 (9th Cir. 2018)......24, 25

<u>United States v. Sivilla</u>, 714 F.3d 1168 (9th Cir. 2013)........23, 24

<u>United States v. Whittemore</u>, 2013 WL 1955897 (D. Nev. 2013).........2

<u>United States v. Zaragoza-Moreira</u>, 780 F.3d 971 (9th Cir. 2015)....20

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.   INTRODUCTION**

3

Defendant moves to dismiss the indictment, to suppress evidence,
or for an adverse inference instruction, claiming that the government
knowingly spoliated exculpatory evidence.  The defendant's claims are
false and unsupported by law.  The Court should deny the motion.

Defendant cannot meet any of the three requirements for relief
under <u>Arizona v. Youngblood</u>, 488 U.S. 51 (1988), a standard defendant
concedes is "onerous."  (Mtn. at 7 n.2.)  <u>First</u>, defendant cannot
show that the backpack had exculpatory value that was apparent before
its destruction.  The backpack's most notable feature is its lack of
relevance:  unlike defendant's pocket, it did not contain the gun.
Defendant claims that the backpack has impeachment value but fails to
explain how officers' description is inconsistent, in any way, with
the backpack's characteristics.  <u>Second</u>, defendant cannot show that
he is unable to obtain comparable evidence.  The backpack is depicted
repeatedly on video recordings that show its size, shape, and
characteristics in detail and in good lighting.  <u>Third</u>, defendant
cannot show bad faith.  Defendant relies heavily on the timeline of
events, but fails to note that the evidence destruction at issue was
ordered <u>before</u> defendant filed his first suppression motion -- the
event that defendant claims put the government on notice of the
backpack's supposed importance.

Because there was no bad faith spoliation and no prejudice,
defendant also cannot establish that a lesser remedy is warranted.
The destruction of the backpack resulted from genuine mistake; LAPD's
recordkeeping system reflected that the case had been resolved, so
disposal of evidence would be consistent with policy, and the federal

1  Task Force Officer was not notified of LAPD's independent decision to
2  dispose of the remaining evidence in its custody.  Such facts do not
3  rise to the level of unreasonable or bad faith government conduct,
4  and defendant identifies no prejudice from the destruction of
5  tertiary physical evidence clearly depicted in multiple bodyworn
6  video recordings.

7      Defendant's request that the Court reconsider its Rule 404(b)
8  ruling is similarly misguided; defendant's request is based on the
9  lack of a physical sock or backpack, but the Court's current ruling
10 is that the facts of the 2022 violent felon in possession conviction
11 will not enter into evidence, so the physical evidence is irrelevant
12 to the 404(b) issue.

13     Finally, as noted above, the government requests that the Court
14 resolve defendant's motion before opening statements -- whether on
15 the papers or after hearing argument.  The government would propose
16 to hold argument on defendant's motion before the jury is sworn, even
17 if that means delaying opening statements until Tuesday.  If the
18 Court denies defendant's motion, the Court should make clear that
19 defendant may not argue spoliation before the jury.  See, e.g., Mfg.
20 Automation and Software Sys., Inc. v. Hughes, No. 2:16-cv-8962-CAS,
21 2019 WL 266970, at *5 (C.D. Cal. Jan. 15, 2019) (precluding party
22 from arguing spoliation in civil case, because "presenting evidence
23 of spoliation to the jury is a remedy" for a violation, "not an
24 automatic right"); United States v. Whittemore, No. 3:12-cr-0058-
25 LRH, 2013 WL 1955897 (D. Nev. 2013) (denying request to argue
26 spoliation in criminal jury trial).

27     Accordingly, the Court should deny defendant's motion in full.

28

## II.   FACTS

### A.   Defendant Flees; LAPD Officers Pursue Him and Find a Loaded Gun

On September 3, 2023, at 4:40 a.m., LAPD officers Simon Beal and Daylon Gomez saw defendant turn his body away from their marked police car while patrolling near Slauson and Denker Avenues in South Central Los Angeles. (Dkt. 22 at 2.) Officer Beal's police report identified at least nine reasons why the officers attempted to speak to, and ultimately conducted a Terry stop with, defendant: he (1) turned away from the officers when they passed, (2) pivoted 180 degrees to face away from the officers afterward, (3) was wearing a "small backpack slung across the chest," (4) was walking alone at 4:40 a.m., (5) was in a high crime area, (6) turned away again to conceal his right side when officers pulled up, (7) took off running in headlong flight, (8) clutched at his waistband while running, and (9) later, during officers' Terry stop, reached for his pants pocket while handcuffed. (Dkt. 16-2 at 3.)

The officers caught up to defendant after a roughly two-block pursuit. Officer Beal patted down defendant's right leg and found a handgun loaded with five rounds of ammunition. (Dkt. 22 at 3.) Defendant is a five-time convicted felon. (Dkt. 22 at 6.)

### B.   Officers Collect Evidence, Including the Backpack

The bodyworn camera footage in this case includes several minutes of footage from multiple vantage points showing both the backpack and the sock, the two items subject to defendant's motion. With respect to defendant's claim that officers would otherwise be subject to devastating impeachment because their report states that defendant was wearing a "small grey backpack across his chest" (Mtn.

3

at 8), the bodyworn video corroborates the officers' description of
the size and orientation of defendant's backpack:

 

(Dkt. 16, Def.'s Ex. B at 4:41:11 (showing portion of backpack across
portion of chest), 4:41:16 (showing defendant's back with backpack
appearing to be worn cross-body and slung to the side).)

Later, also on video, Officer Beal examines the backpack.  His
examination is captured in good lighting, inside of a patrol vehicle,
and goes on for more than a minute.  Though the full video is even
more clear (see Dkt. 16, Def.'s Ex. B, from 4:57:09 to 4:58:24),
several screenshots show the backpack and, similarly, corroborate the
officers' description of the "small backpack" -- or, to the extent
defendant disagrees but simply wants clear footage of the backpack to
show the officers handling the backpack and its contents:



(04:57:09.)                         (04:57:15.)




(04:57:23.)                         (04:57:24.)

(Dkt. 16, Def.'s Ex. B.)

     The government also produced bodyworn camera footage from one of the backup officers.[1]  Though the moving video again shows the backpack even more clearly, the screenshots clearly depict the size, shape, and characteristics of both the backpack and sock:

---

[1] The government will lodge the electronic exhibit on Monday after the Court opens.

5

1
2
3
4
5
6
7
8
9
10
11
 

(04:48:03)                    (04:48:04)

12
13
14
15
16
17
18
19
20
21
 

(04:48:14.)                   (04:48:20.)

22
23
24
25
26
27
28

6


(04:48:17.)


(04:48:23.)

(See Larsen Decl., Ex. A, from 4:48:00 to 4:48:30.)

After taking defendant into custody, officers logged the evidence they collected.  Officers seized roughly ten grams of marijuana, the Taurus PT740 .40-caliber handgun, five founds of .40-caliber ammunition, a .40-caliber black magazine, a glass jar containing the marijuana, and the gray backpack.  (Dkt. 58-2.) Officers booked the evidence, filled out multiple property reports documenting what they seized, and presented the evidence to LAPD's property division to preserve it.  (Id.)

## C.  LAPD Evidence Custodians Destroy the Backpack and a Glass Jar That Had Contained Marijuana

When LAPD receives evidence, its practice is to preserve that evidence until the adjudication of the case.  (Dkt. 58-6.)  LAPD property officers track each state prosecution and send notices of disposition of evidence when state cases end.  (Declaration of Patrick Lane (Lane Decl.), ¶ 4.)  LAPD designates a detective to, as a secondary role, manage requests for disposition of evidence.  (Id.,

7

¶ 2.)  That detective is responsible for approving or rejecting any requests to dispose of evidence.  (Id., ¶ 2.)

In this case, the assigned detective was not the government's case agent or any of the officers involved in the case.  Instead, it was Detective Patrick Lane, who is the gun coordinator for the 77th Division.  (Id., ¶ 2.)   Officer Lane handles roughly 1,000 requests for disposition per year.  (Id., ¶ 2.)   Information about LAPD-initiated cases is stored in a system called APIMS.  (Id., ¶ 5.)   The APIMS report was produced to the defendant in this case prior to defendant's present motion.  (Dkt. 58-5.)

Detective Lane received a disposition request for the backpack and glass jar in this case.[2]  (Id. at ¶ 5.)   The disposition sheet indicates "ATF" next to the firearm, magazine, and ammunition, but not next to the backpack, jar, or marijuana.  (Lane Decl., Ex. 1.) The case is listed as "dismissed."  (Id.)   Detective Lane reviewed the disposition sheet and assumed that, because the case was dismissed locally and the gun and ammunition were taken by ATF, he could approve the request to dispose of the remaining items, which he did on April 24, 2024.  (Id., ¶ 6, 8.)   Detective Lane was unaware of the federal case, its status, or defendant's motion to suppress evidence.  (Id. ¶ 7.)   Detective Lane also did not and does not know the defendant in this case, and the detective had no understanding about the relevance or evidentiary value (or lack thereof) of the backpack or jar.  (Id., ¶ 9.)   Detective Lane had no contact with the federal prosecutors until July 26, 2024.  (Id., ¶ 10.)

---

[2] The firearm, ammunition, and magazine had previously been transferred to ATF custody when the case was adopted federally.

8

The prosecution's case agent -- ATF Task Force Officer Deanna Quesada -- believed that the evidence was being preserved consistent with LAPD's normal preservation policy. (Declaration of Deanna Quesada (Quesada Decl.), ¶ 6-7.) Through a standardized LAPD form submitted through Police Officer Megan Casalicchio, TFO Quesada informed LAPD's property division that "ATF [was] assuming [the] investigation," and accordingly requested transfer of the gun, magazine, and ammunition. (Id., ¶ 4.) TFO Quesada was unaware that LAPD's property officers considered the case adjudicated due to the state dismissal, and was not notified or contacted by Detective Lane or any property officers before LAPD disposed of the backpack or jar. (Id., ¶ 7.) If she had been contacted or otherwise became aware, she would have insisted to not approve the disposal of the backpack or jar. (Id.)

**D.   The Court Denies Defendant's Motion to Suppress Evidence**

On July 10, 2024, the Court heard argument and conducted an evidentiary hearing before denying defendant's first motion to suppress. (Dkt. 34.) The government's opposition to defendant's motion to suppress focused on the totality of the circumstances surrounding the officers' stop, including the fact that defendant had turned away from officers before fleeing on foot. (Dkt. 22.) The government did not rely on the appearance of the backpack, instead focusing on defendant turning away to conceal his body, defendant's flight in a high-crime area, and defendant clutching as his waistband. (Id.) The Court's oral ruling denying suppression listed several factors, including the late hour, defendant's movements to conceal the right side of his body, and his headlong flight. (Id.)

1    Neither the government's argument nor the Court's ruling placed

2    "central" importance on the backpack.

3    **III. ARGUMENT**

4         **A.   Defendant Cannot Show That the Government Knowingly
              Destroyed Material Exculpatory Evidence with No Comparable
5             Substitute in Bad Faith**

6         The Due Process Clause does not "impos[e] on the police an

7    undifferentiated and absolute duty to retain and to preserve all

8    material that might be of conceivable evidentiary significance in a

9    particular prosecution." Arizona v. Youngblood, 488 U.S. 51, 58

10   (1988). Instead, the case law treats different kinds of evidence

11   differently. With respect to material exculpatory evidence, a "due

12   process violation occurs whenever such evidence is withheld."

13   Illinois v. Fisher, 540 U.S. 544, 547 (2004).

14        The "Supreme Court applies a different test if there is a

15   'failure of the State to preserve evidentiary material of which no

16   more can be said than that it could have been subjected to tests, the

17   results of which might have exonerated the defendant.'" United

18   States v. Del Toro-Barboza, 673 F.3d 1136, 1149 (9th Cir. 2012)

19   (citation omitted). In that case, for a failure to retain

20   potentially useful evidence to rise the level of a due process

21   violation, a defendant must show (1) the evidence "possess[ed]

22   exculpatory value that was apparent before the evidence was

23   destroyed," California v. Trombetta, 467 U.S. 479, 489 (1984); (2)

24   the evidence was of such a nature that the defendant would be "unable

25   to obtain comparable evidence by other reasonably available means,"

26   id.; and (3) the government acted in "bad faith," Youngblood, 488

27   U.S. at 58. Defendant bears the burden to prove a due process

28

violation.  <u>United States v. Lord</u>, 711 F.2d 887, 891 n.3 (9th Cir. 1983).  Defendant fails to establish any of the three requirements.

1.   <u>The backpack's most notable feature is its lack of relevance; it has no exculpatory value.</u>

*a. The backpack was not materially exculpatory or even potentially exculpatory.*

Defendant's primary argument centers around a backpack whose main feature is that it did not contain a gun.  It is not material exculpatory evidence, let alone potentially exculpatory evidence.  No matter the standard, defendant's spoliation claim fails at the outset.

In the context of spoliation, material exculpatory evidence refers to evidence that is clearly and actually favorable to the accused, such as a co-defendant's confession.  <u>See Fisher</u>, 540 U.S. at 548 (citing <u>Brady v. Maryland</u>, 373 U.S. 83, 84 (1963)).  The backpack does not approach that standard.  The officers did not find defendant's gun in the backpack; it was in defendant's pants.  (Dkt. 16-2 at 3.)  Though they suspected the backpack could have held defendant's gun, it did not.  (<u>Id</u>.)  Despite those undisputable facts, defendant makes a convoluted argument that the backpack is materially exculpatory because it could be used to impeach the officers by pointing out that officers described the backpack as a small cross-body bag when really it was a "regular-sized backpack, just with one strap"; then, because impeachment evidence is exculpatory, the backpack itself thus must be material exculpatory evidence.  (Mtn. at 8.)

Defendant's argument falters on multiple levels, but starting with the facts, defendant is simply wrong to characterize the backpack as impeachment.  Consistent with officers' description,

11

defendant appears to agree that regardless of its original number of straps, the backpack had "just [] one strap" at the time, similar to a cross-body backpack.  (Mtn. at 8.)  There is no meaningful distinction between officers' description, the actual appearance of the backpack, and even defendant's description of it in his motion as a "regular-sized" backpack with "one strap":

 

(Dkt. 16, Def.'s Ex. B, at 4:57:23.)

(Larsen Decl., Ex. 1, at 04:48:04.)

Recordings also show defendant wearing the backpack across his body:



(Dkt. 16, Def.'s Ex. B at 4:41:11, 4:41:16.)

Even setting aside defendant's mischaracterization of the facts, defendant nowhere explains how the backpack is actually exculpatory of the crime.  Defendant again confuses trial with a motion to suppress.  Even if defendant could show that officers' "reason for stopping Mr. Holbrook was both false and pretextual" (it was neither), that would not <u>materially exculpate</u> defendant because it in no way diminishes the substantial evidence of defendant's guilt, including the video evidence showing defendant had a gun hidden in a sock in his pocket and defendant's admission.  (<u>See, e.g.</u>, Dkt. 16, Def.'s Ex. B.)  <u>See</u> <u>United States v. Barton</u>, 995 F.2d 931, 934 (9th Cir. 1993) (loss of potential impeachment evidence at suppression hearing was not "materially exculpatory" because "successful suppression of incriminating evidence is unrelated to the actual culpability of an accused").  No material exculpatory information exists, and claiming that the supposed discrepancy between a small cross-body backpack and a "regular-sized backpack, just with one strap" (Mtn. at 8) is somehow impeachment does not prove otherwise.

Indeed, defendant cannot even meet the lower standard requiring preservation of "potentially useful" evidence.  That standard applies to the failure to preserve evidence "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant."  Youngblood, 488 U.S. 51, 58 (9th Cir. 1988).  That defendant cannot establish the lower bar shows he also cannot meet the higher one.[3]  See Paradis v. Arave, 954 F.2d 1483, 1488 (9th Cir. 1992), GVR'ed on other grounds, 507 U.S. 1026 ("The mere failure to preserve evidence which could have been subjected to tests which might have exonerated the defendant does not constitute a due process violation.")

None of defendant's arguments for the backpack's potential exculpatory value make sense.  First, defendant speculates that "because of" the "police report," the "jury might assume it was a small fannypack which could bulge if a firearm was inside it."  (Mtn. at 9.)  But the jury will not see the police report, which is hearsay, unless the *defense* introduces it to cross-examine the officers concerning the validity of the stop -- which again has no relevance at trial.  Plus, the jury will see the video depicting the backpack from multiple angles and need not make any assumptions from a secondhand description.  The video clearly shows the backpack is

---

[3] Defendant tries to get around this by arguing that all impeachment is materially exculpatory under Giglio v. United States, 405 U.S. 150 (1972).  Defendant's argument would turn Trombetta and Youngblood on their head, and would require dismissal whenever any impeachment evidence was not preserved, no matter how inconsequential and no matter how lacking in bad faith.  Defendant cites no caselaw to support that extreme position, and it is not the law.  See, e.g., Barton, 995 F.2d at 933 (loss of impeachment evidence was not exculpatory, and while it could violate due process in other ways, did not do so absent evidence that officers had the "purpose of destroying" evidence to "insulate" allegations in a search warrant).

14

1  not a fanny pack, and no officer has characterized the backpack as a
2  fanny pack.  (Cf. Mtn. at 9.)

3      Second, defendant argues the backpack is potentially useful
4  because the government intends to introduce Rule 404(b) evidence that
5  involved a gun stored in a sock inside a backpack.  (Id.)  But the
6  relevant similarity highlighted in the government's motion was the
7  sock (addressed below), not the backpack, since here the backpack
8  here did not have a gun -- and in any event, the Court's 404(b)
9  ruling was that the details of the prior felony will not come in.

10      Third, defendant argues that it is "imperative" to "test his
11  backpack for gunshot residue," because the "absence of residue would
12  suggest" that he "had not carried this gun in the backpack that was
13  destroyed."  (Mtn. at 10.)  But no one has claimed otherwise; the gun
14  was found in a sock in defendant's pants, not in his backpack, so the
15  absence of residue on the backpack would suggest nothing about
16  whether defendant possessed the gun (though the presence of residue
17  would obviously inculpate defendant further).  Cf. United States v.
18  Martinez-Martinez, 369 F.3d 1076, 1087 (9th Cir. 2004) (when evidence
19  "may have proven exculpatory" or "may well have inculpated
20  [defendant] further," the failure to preserve it was not a due
21  process violation).

22          b.   Any purported exculpatory value was not apparent.
23      Perhaps even more dispositively, the backpack lacked any
24  "apparent" exculpatory value at the time of its disposal.  The "duty
25  to preserve evidence is limited to material evidence, i.e., evidence
26  whose exculpatory value was apparent before its destruction . . . ."
27  Grisby v. Blodgett, 130 F.3d 365, 371 (9th Cir. 1997).  Defendant
28  argues that backpack had "apparent" exculpatory value because as the

"primary basis for [officers'] initial stop of Mr. Holbrook," the backpack must have been a "centrally important piece of evidence." (Mtn. at 8.)  That claim lacks any anchor in reality.  The backpack was only one of several bases that officers identified to support their stop (see Dkt. 16-2), and it played no special importance in either the argument on defendant's motion to suppress or the Court's ruling.  (See Dkt. 22, 34.)  In any event, defendant again fails to explain how any apparent relevance to defendant's motion to suppress translates into exculpatory value at trial.

The Ninth Circuit's decision in United States v. Drake, 543 F.3d 1080 (9th Cir. 2008), is instructive.  Defendant was convicted of Hobbs Act robbery, and claimed that the loss of the only video showing the robbery -- a digital surveillance tape -- violated his due process rights.  Id.  Rejecting that argument, the Ninth Circuit explained that the "exculpatory value of an item of evidence is not 'apparent' when the evidence merely 'could have' exculpated the defendant," because it was also possible that the recording "would have further incriminated" the defendant.  Id. at 1090.  If the possible exculpatory value of the only surveillance video of a robbery is not immediately "apparent," then neither is a backpack whose main feature is that, unlike defendant's pocket, it did not hold a gun.  Defendant offers no other basis to support his claim that the backpack held apparent exculpatory value.  Nothing about the backpack -- its size, its existence, or even the officers' descriptions of it -- changes the fact that defendant was videotaped possessing a gun in his pocket.

16

2.    <u>Comparable evidence is available because the backpack
is clearly depicted in multiple videos.</u>

Defendant also fails to show that he is "unable to obtain comparable evidence by other reasonably available means." <u>Trombetta</u>, 467 U.S. at 489.  <u>Trombetta</u> does not require that the alternative evidence be an exact substitute for that which is lost; it only requires that the substitute evidence be "comparable."  <u>Id.</u> Comparable or substitute evidence may be of poorer quality than the lost or destroyed evidence.  <u>See id.</u> at 490.  Again, <u>Drake</u> is instructive.  Despite losing the only surveillance video of a robbery, the Ninth Circuit held that a mere fourteen still images -- when combined with the testimony of the officers who saw the original recording -- was sufficiently comparable to satisfy <u>Trombetta</u>.  543 F.3d at 1090.

Here, the officers' bodyworn cameras captured multiple minutes of footage depicting the backpack.  In particular, Officer Beal's examination is fully captured in good lighting and goes on for more than a minute.  (<u>See</u> Dkt. 16, Def.'s Ex. B, from 4:57:09 to 4:58:24.) Also notably, a backup officers' recording also captures the backpack in motion, with multiple size comparisons and in good lighting.  (<u>See</u> Larsen Decl., Ex. 1, from 4:48:01 to 4:48:30.)  Defendant argues that the bodyworn footage is not comparable because it is "difficult to assess its comparative size," because the "strap is not clearly visible," and the video does not show a "full, well-lit view."  All of those claims are demonstrably false, and the moving video is even more clear than the screenshots:

(04:57:23.)



(04:57:24.)



(04:48:14.)



(04:48:20.)

(Dkt. 16, Def.'s Ex. B; see also Larsen Decl., Ex. 1.)  Even if all the government had preserved were the roughly dozen screenshots presented in this motion -- rather than multiple clips showing the backpack -- that would be sufficient when combined with the officers' percipient testimony.  Drake, 543 F.3d at 1090.

Defendant relies on United States v. Cooper, 983 F.2d 928 (9th Cir. 1993) to argue that officers' testimony is insufficiently

18

1  comparable.  If testimony were the only other evidence, this might be

2  a different scenario, but it is not.  Regardless, Cooper is

3  distinguishable because of the high degree of government bad faith

4  present in that case.  Unlike here, the evidence's "value as

5  potentially exculpatory evidence was repeatedly suggested" to agents.

6  Id. at 932.  Further, the key issue in Cooper was whether a

7  particular piece of industrial equipment could support making

8  methamphetamine, and the defendant proffered an expert who could

9  testify to that issue but needed to examine the equipment, which was

10 destroyed and could not be replaced or substituted.  Id. at 932.

11 That is not the case here; no viewing, testing, or analyzing of the

12 physical backpack, much less the results of any tests or analyses,

13 would exculpate defendant at trial.

14           3.   Defendant fails to show bad faith.

15      "[U]nless a criminal defendant can show bad faith on the part of

16 the police, failure to preserve potentially useful evidence does not

17 constitute a denial of due process of law."  Youngblood, 488 U.S. at

18 58.  Bad faith requires "malicious intent."  United States v.

19 Estrada, 453 F.3d 1208, 1212–13 (9th Cir. 2006).

20      The facts of this case do not approach the level of bad faith

21 required to establish a due process violation.  LAPD's disposal of

22 the backpack appears to have resulted from a miscommunication between

23 the federal agents and the LAPD's property officers.  The property

24 officers believed the case had been adjudicated because the state

25 case had been dismissed (Lane Decl., ¶ 8-9) and sent a request to

26 Detective Lane, who understood that federal agents had seized the

27 firearm and ammunition but was otherwise unaware of any pending

28 federal case, much less this one.  (Id.)  Detective Lane then

                                   19

1    authorized the disposal of the backpack with no knowledge that this

2    federal case had been filed, let alone knowledge of defendant's

3    suppression motion.  (Id.)  Meanwhile, TFO Quesada had coordinated

4    the transfer of the firearm and ammunition to ATF and had informed

5    LAPD of the pending federal case, and believed that LAPD would

6    continue to preserve the backpack as they had been previously doing.

7    (Quesada Decl., ¶ 7.)  No one contacted TFO Quesada before the

8    disposal of the remaining items in the backpack; if someone had, TFO

9    Quesada would have instructed LAPD to continue to preserve these

10   items.  (Id.)

11       Defendant's recital of the timeline of this case does not stand

12   in for a showing of actual bad faith motivation.[4]  Defendant notes

13   that he had made a pending request for inspection in February 2024.

14   (Mtn. at 12.)  But even setting aside that defense counsel's

15   investigator did not return the government's voicemail seeking to set

16   up that inspection (as defendant admits; see Mtn. at 4), the Supreme

17   Court has rejected a similar argument.  See Fisher, 540 U.S. at 547

18   (that destruction of evidence followed discovery request did not

19   stand in for showing of actual bad faith, malicious destruction of

20   evidence).  Defendant also notes that the backpack was destroyed "a

21

22   ───────────────

23       [4] Nor does this case resemble United States v. Zaragoza-Moreira,
     780 F.3d 971 (9th Cir. 2015).  Officers observed the defendant acting
     suspiciously in a border line.  In contemporaneous interviews,
24   defendant told officers that she was acting suspicious on purpose to
     get their attention; she was being forced to smuggle drugs and would
25   be killed.  Despite knowing at the time that video footage could
     corroborate defendant's duress defense, the officers nevertheless did
26   nothing to preserve that video footage.  Id. at 976.  Here, and
     unlike in Zaragoza-Moreira, the backpack presented no similarly
27   "apparent" exculpatory value at any point in the life of this case,
     and the officers nonetheless collected it and sought to preserve it.
28   In addition, defendant has not noticed any duress, justification, or
     necessity defense in this case.

                                        20

month after the defense filed a motion to suppress." (Mtn. at 11.)
But defendant's own evidence shows this claim is misleading and
obfuscates the truth: LAPD ordered the backpack's destruction a day
<u>before</u> defendant filed his motion. (Dkt. 58-5 at 5 (noting "entry
date -> 04/24/2024"); <u>see</u> Dkt. 16 (filed 4/24/2024).) Detective
Lane's declaration also clarifies that he approved the disposal of
evidence on April 16, well before defendant filed his suppression
motion. (Lane Decl., ¶ 8.)

Similarly, officers' "compliance with 'departmental procedure'
should be regarded as an indication that the disposal of evidence was
not performed in 'bad faith.'" <u>Barton</u>, 995 F.2d at 935 (quoting
<u>United States v. Heffington</u>, 952 F.2d 275, 281 (9th Cir. 1991)).
That rule makes sense. Officers making a good faith effort to comply
with department policy are unlikely to be secretly following the
rules as a way to clandestinely destroy evidence; any evidence
disposal that nevertheless occurs when officers follow policy is
likely to be the result of accident or genuine mistake inconsistent
with bad faith. That is exactly what appears to have happened in
this case. While defendant points to LAPD policy requiring
preservation of evidence until case adjudication, LAPD's property
officers believed that this case <u>had</u> been adjudicated because the
state prosecution had been dismissed. Regardless, both Detective
Lane and TFO Quesada took steps to preserve evidence and followed
LAPD policies to accomplish that goal. (Lane Decl., ¶ 6-10; Quesada
Decl., ¶ 3-7.) The officers' good faith effort to follow policies
and procedures to preserve evidence forecloses finding any bad faith
due process violation. <u>Youngblood</u>, 488 U.S. at 58.

4.    Defendant makes no Youngblood argument as to the uncollected sock, and Ninth Circuit authority would foreclose any such claim.

While defendant's motion mentions defendant's sock in several places, defendant does not appear to argue that any failure to collect the sock violated due process.  (See Mtn. at 7-12 (no argument that the sock was materially exculpatory or that the government acted in bad faith by failing to collect the sock).)  For good reason.  "A failure to collect potentially useful evidence is distinctly different than a destruction of evidence that is already extant."  United States v. Martinez-Martinez, 369 F.3d 1076, 1087 (9th Cir. 2004).  Even if defendant had raised a Youngblood claim as to the sock (and he has not), defendant fails to offer any reason to think the sock (that contained defendant's firearm) has exculpatory value (it does not) or that officers acted in bad faith by failing to collect it (they did not).

* * *

Because defendant fails to show any of the three requirements to establish a due process violation under Youngblood's "onerous" standard (Mtn. at 7 n.2), let alone all of the requirements, the Court should deny his motion.

**B.    No lesser sanctions are warranted, including an adverse inference instruction.**

Neither dismissal nor any lesser sanction is warranted here. Defendant concedes that courts may give an adverse inference instruction "only when the quality of the government's conduct was poor and the prejudice to the defendant was significant."  (Mtn. at 15 (citing United States v. John, 683 F. App'x 589, 593 (9th Cir. 2017) (unpublished)).)  The government "bears the burden of

justifying its conduct and the accused of demonstrating prejudice." United States v. Sivilla, 714 F.3d 1168, 1173 (9th Cir. 2013).  The government's conduct was "taken in good faith" and with "reasonable justification," and defendant fails to demonstrate any prejudice, so the Court should deny defendant's request for suppression, an adverse jury instruction, or any so-called "lesser" sanctions.

> ### 1.   Defendant's misleading partial quotation of the relevant legal standard.

To support his request for an adverse inference instruction, defendant cites the Ninth Circuit's decision in Sivilla.  Using a "cleaned up" citation signal, defendant quotes Sivilla to say that courts evaluating government conduct must consider "whether the Government acted in disregard for the interests of the accused, [and] whether it was negligent in failing to adhere to established and reasonable standards of care for police and prosecutorial functions, and, if the acts were deliberate, whether they were taken in good faith or with reasonable justification."  (Mtn. at 14.)

Defendant alters the substance of the above quotation, and in doing so elids a factor unfavorable to his argument.  Though purporting to quote Sivilla, the period at the end of that sentence is defendant's addition, which is not marked in brackets.  However, in Sivilla itself, the Ninth Circuit ends the above quotation with an ellipsis (not a period) and goes on to say that "... It is relevant also to inquire whether the government attorneys prosecuting the case have participated in the events leading to loss or destruction of the evidence, for prosecutorial action may bear upon existence of a motive to harm the accused."  Sivilla, 714 F.3d at 1173 (ellipsis in

original).  That "relevant" factor is not mentioned anywhere in defendant's motion.

### 2. The government acted within the range of reasonableness.

Because the government's conduct was within the "general range of reasonableness," no remedies are warranted.  United States v. Robertson, 895 F.3d 1206, 1213 (9th Cir. 2018).  Robertson is instructive.  In that case, a USPIS agent investigating missing gift cards determined an employee was involved in the theft.  The agent later obtained a warrant to search the employee's car in the office parking lot and found 52 pieces of stolen mail.  But even though the agent was aware of a videorecording of the parking lot in the government's possession -- which could have exonerated the defendant -- he never obtained it.

The Ninth Circuit held that while the "government's conduct may have been imperfect," it "was not unreasonable or in bad faith" under Sivilla, and thus did not merit any sanctions.  Specifically discussing the factor elided by defendant's quotation of Sivilla, the Ninth Circuit found it particularly "significant that neither the OIG agents nor the government attorneys prosecuting the case participated in the events leading to the loss of the evidence."  Id. at 1214.  So too here.  Both Detective Lane and TFO Quesada acted "in good faith" and with "reasonable justification":  Detective Lane believed the case had been dismissed, and TFO Quesada testified that had she been informed, she would have acted to prevent the backpack's disposal. Especially when the "exculpatory value of the evidence was not apparent" (a fact that continues to remain true today), the genuine mistake at the heart of this motion does not rise to the level of

"unreasonable or bad faith" conduct to justify any sanction under Sivilla. Similarly, none of the prosecuting attorneys were involved in the disposal of this evidence. Indeed, the prosecuting attorneys sought to accommodate defense counsel's request to schedule an evidence viewing early on in the case, and learned of the disposal evidence for the first time when seeking to set up that viewing before the scheduled trial date. (Dkt. 58-4 (email from government to defense counsel).) At no point where the prosecuting attorneys consulted about the disposal of these items.

### 3.   There is no prejudice to defendant.

As for prejudice to defendants, courts "consider the centrality and importance of the lost evidence to the case, the probative value and reliability of secondary or substitute evidence, the nature and probable weight of inferences and kinds of proof lost to the accused, and the probable effect on the jury from the absence of the evidence." Robertson, 895 F.3d at 1214.

Here, any prejudice is minimal. The "central evidence" in this case is the gun, the video showing defendant possessing the gun, and defendant's admission that he had the gun, among other things. While defendant claims that the backpack and sock are "central evidence, since they form the basis for the officers' stop," this trial is about whether defendant knowingly possessed a gun, not whether officers conducted a permissible Terry stop -- an issue the Court has already resolved, and in which the backpack and sock did not play any significant role. If anything, defendant's argument confirms only that he and his counsel intend to disregard the Court's guidance at the pretrial conference that trial will not be a forum to relitigate the Court's suppression rulings.

The other factors similarly favor finding no prejudice.  There is reliable secondary evidence in the form of multiple body camera recordings depicting both the backpack and sock, as described above. Defendant's claim that the backpack and sock carry probative value, unique inferences, and effect on the jury rest on the dubious claim that there is some meaningful difference between an officer's description of a small cross-body backpack with defendant's view of the backpack as a "regular-sized backpack, just with one strap." (Mtn. at 8.)  Defendant falls short of demonstrating prejudice.

    4. <u>Defendant's motion provides no cause to revisit the Court's ruling on Rule 404(b) evidence.</u>

Finally, defendant asks the Court to revisit its 404(b) ruling. (Mtn. at 15.)  But the Court's ruling was that the details of the prior crime would <u>not</u> be admissible, so the fact that the defendant stored a gun in a sock inside a backpack last time is not coming into evidence under the Court's current ruling.  In any event, the sock is depicted on video, and for all the reasons above, defendant fails to establish that he is entitled to any relief.  Defendant argues that it is prejudicial to argue about physical items that are depicted only on video.  But he cites no authority for that proposition, and there is no rule requiring that a jury view every physical object in person in order for depictions of the object to be admissible.  And unlike the firearm -- whose physical characteristics are relevant to elements of the crime -- the sock's and backpack's shape and size have no evidentiary value.  The Court should deny defendant's motion in its entirety.

**IV.   CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court deny defendant's motion.

Dated: July 28, 2024               Respectfully submitted,

                                   E. MARTIN ESTRADA
                                   United States Attorney

                                   MACK E. JENKINS
                                   Assistant United States Attorney
                                   Chief, Criminal Division


                                    _/s/_
                                   WILLIAM LARSEN
                                   ALEXANDRA MICHAEL
                                   Assistant United States Attorneys

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA